Andrew R. MOHR and Alice J. Mohr, his wife,
Plaintiffs-Respondents,†

v.

CITY OF MILWAUKEE, a municipal corporation,
Defendant-Appellant and Cross-Respondent,

Leroy J. HARRIS and Johnnie M. Harris, his wife,
Defendants-Respondents and Cross-Appellants,†

James D. COLLINS and Agnes J. Collins, his wife, Valecia Washington, Liddie Collins, Clara Carter, Globe Union Credit Union, a Wisconsin corporation, W. T. Grant Company, a foreign corporation, James Bruce, First Wisconsin National Bank of Milwaukee, a national banking association, St. Anthony Hospital, a Wisconsin corporation, Harley Davidson Credit Union, a Wisconsin corporation, Mid City Realty, Co., Inc., a Wisconsin corporation, and State of Wisconsin, Defendants.

Court of Appeals

*No. 80–406. Submitted on briefs January 23, 1981.
—Decided March 17, 1981.*
(Also reported in 305 N.W.2d 174.)

---

† Petition to review granted.

For the defendant-appellant and cross-respondent the cause was submitted on the brief of *James B. Brennan,* city attorney, and *Michael A. I. Whitcomb,* assistant city attorney, of Milwaukee.

For the defendants-respondents and cross-appellants the cause was submitted on the brief of *John B. Werra* and *Patrick F. Brown* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *Rakita & Rakita* of Milwaukee.

Before Voss, P.J., Brown and Scott, J.J.

BROWN, J.   The City of Milwaukee appeals from an order finding it in contempt of a foreclosure judgment. The city was, by virtue of its claim for outstanding real estate taxes, a named defendant in the foreclosure action. The judgment contained a prohibition against the commission of waste on the property during the one year redemption period. After expiration of the redemption period and after notice was given to all interested parties, the city razed the subject building. The trial court found destruction of the building constituted waste, and, thus, the city had violated the foreclosure judgment. Pursuant

to sec. 295.01 *et seq.,*[1] Stats., the trial court awarded to the mortgagors and mortgagees damages resultant from the razing of the property. We reverse.

Andrew and Alice Mohr held the mortgage on a parcel of commercial property in Milwaukee. In September 1975, the Mohrs commenced a foreclosure action against Leroy and Johnnie Harris, mortgagors, and James and Agnes Collins, co-mortgagors. The City of Milwaukee was a named defendant in the foreclosure action because of its claim for outstanding property taxes. The city did not actively participate in the suit.

On January 30, 1976, the trial court rendered a judgment of foreclosure. The judgment granted a one year equity of redemption period. The judgment contained the following language:

> It is further ordered and adjudged, that the defendants and all persons claiming under them, be, and they hereby are, enjoined from committing waste upon said mortgaged premises, and from doing any act that may impair the value of same, unless meanwhile said premises shall have been duly redeemed, as provided by law.

On September 15, 1976, the Milwaukee Department of Building Inspection and Safety Engineering issued a raze order upon the property. Proper statutory notice, as required by sec. 66.05(3), Stats., was given to all persons affected by the order. The owners and lienholders of record were allowed fifty-one days to repair or raze and remove the deteriorated structure. Although no party to the foreclosure action filed a formal objection to the order, the city, at the request of the mortgagors and mortgagees, postponed demolition until the redemption period expired. The mortgagors were unable to redeem the property. The redemption period

---

[1] Chapter 295, Stats. (1977), was renumbered as ch. 785 by ch. 32, Laws of 1979, and was repealed and recreated by ch. 257, Laws of 1979. The statutory changes do not affect this appeal.

expired on January 30, 1977. The improvements on the property were razed on March 17, 1977.

Following dismissal of the city from the Harrises' suit for tort damages stemming from the demolition, the Harrises obtained an order to show cause from the foreclosure court to hold the city in civil contempt. At the contempt hearing, the trial court found the razing constituted waste on the property which was specifically prohibited by the foreclosure judgment. The court further found the city had waived the statutory time limits for challenging a raze order by withholding demolition until after the redemption period.

The city does not deny it razed the building. However, it contends that, as a matter of law, it could not commit waste on the property. There are three elements of common-law waste:

(1) unreasonable conduct by the owner of a possessory estate;
(2) resulting in physical damage to the real estate; and
(3) a substantial diminution in the value of the estate in which others have an interest.

*Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 381, 254 N.W.2d 463, 467 (1977).

For this court to reverse factual findings of a trial court, the evidence supporting a contrary finding must constitute the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.,* 87 Wis.2d 243, 249–50, 274 N.W.2d 647, 650 (1979). However, an appellate court is not bound by the trial court's finding which is based upon undisputed evidence when that finding is essentially a conclusion of law. *Compton v. Shopko Stores, Inc.,* 93 Wis.2d 613, 616, 287 N.W.2d 720, 721 (1980).

The facts are undisputed. The issue is whether the city's conduct satisfies the elements of common-law waste. We conclude that, given these facts, two elements are not met. Because of the merits of the arguments raised by the parties, we will consider the elements set forth in *Pleasure Time, Inc.,* out of sequence.

## I. SUBSTANTIAL DIMINUTION IN VALUE

An act of waste must substantially diminish the value of the property. Section 66.05(1)(a), Stats., authorizes the municipal building inspector to raze and remove a building "which in its judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation, occupancy or use, and [is] . . . unreasonable to repair." A municipality's authority under sec. 66.05, Stats., is designed to protect the public from the danger presented by seriously dilapidated or damaged structures. *City of Appleton v. Brunschweiler,* 52 Wis.2d 303, 306 190 N.W. 2d 545, 547 (1971). The statute should be construed to effect its remedial purpose. *See, e.g., Donley v. Boettcher,* 79 Wis.2d 393, 255 N.W.2d 574 (1977). A municipality's decision to raze implies that the building's deterioration is so severe that only its destruction can ensure the public safety.

A building out of repair to that degree is of marginal, if any, value to its owner. In *Gambrell v. Campbellsport Mutual Insurance Co.,* 47 Wis.2d 483, 177 N.W.2d 313 (1970), the supreme court stated:

An administrative order of a municipal building inspection department directing the razing of a burned building is a legislatively approved declaration that for public policy reasons the damage to the property constitutes a total loss.

*Id.* at 490, 177 N.W.2d at 316. Similarly, in *Gimbels Midwest, Inc. v. Northwestern Insurance Co.*, 72 Wis.2d 84, 96, 240 N.W.2d 140, 147 (1976), the court held that the issuance of a raze order results in a constructive total loss of the structure.

Alleged acts of waste must substantially decrease the property's value. A building subject to a raze order is, by statutory definition, so deteriorated that repairs are deemed unreasonable. Public safety considerations mandate removal of the structure. Therefore, we conclude the ultimate destruction of the building cannot be said to have substantially diminished or impaired the real estate's value. There was only marginal value in the building to begin with. Removing or razing the structure could not, as a matter of law, constitute waste to the real estate but would, logically, tend to increase the real estate's value.

## II. POSSESSORY INTEREST

Waste can only be committed by an owner of a possessory estate. *Pleasure Time, Inc., supra.* A possessory interest implies a right to enter and occupy the premises lawfully, for example, the holder of legal or equitable title or a tenancy interest. The city's involvement in the foreclosure action resulted from outstanding real estate taxes. Its interest was that of a lienholder. The Mohrs had legal title to the property. The city did not have a possessory estate in the razed property. Therefore, the city could not commit waste.

The proper sanction against a lienholder who damages real property, then, cannot be common-law waste because there is no possessory interest in the lienholder. Rather, the proper sanction would be the tort of trespass. The element of possessory interest distinguishes waste

from trespass. Although injurious to the premises, trespass can only be committed by a stranger to the title. *R. C. Bowen Estate v. Continental Trailways, Inc.*, 152 Texas 260, 263, 256 S.W.2d 71, 72 (1953). The city is a stranger to the title whose entry and conduct has been legislatively sanctioned. The city's authority pursuant to sec. 66.05, Stats., removes its actions from the scope of trespass.[2]

### III.  EXCLUSIVE REMEDY UNDER SEC. 66.05(3), STATS.

The city characterizes the contempt proceedings as an attempt by the mortgagors and mortgagees to avoid the time limits and procedure prescribed by sec. 66.05 (3), Stats. A municipality must serve a raze order upon the property owner and holders of any encumbrance of record. *See* sec. 66.05(1)(a), Stats. Service must conform to the standards of sec. 801.11, Stats. If the owner or a lienholder cannot be located, the city may post the order on the main entrance of the building and publish the order as a Class 3 notice, under ch. 985, Stats. Sec. 66.05(1)(a), Stats.

Any affected party may challenge the order by application for a restraining order from the circuit court within thirty days of service of the raze order. Secs. 66.05(3) and 893.76, Stats.[3] Failure to do so forfeits

---

[2] The city's authority to remove the structure and not commit trespass was recognized by the circuit court in a previous action brought by the mortgagors for tortiously and negligently causing the improvements to be razed. The court dismissed the claim against the city on the grounds that the claim was barred as an action related to a raze order which was not timely challenged.

[3] Section 66.05(3), Stats., provides that:

Anyone affected by any such order shall within the time provided by s. 893.76 apply to the circuit court for an order restrain-

the party's right to a judicial hearing. *Gehr v. City of Sheboygan,* 81 Wis.2d 117, 124, 260 N.W.2d 30, 34 (1977).

The trial court reasoned that because informal negotiations between the city and the mortgagors resulted in a delay of the demolition, the city waived compliance with sec. 66.05(3), Stats.[4] The mortgagees and mortgagors argue that the city's delay justified their belief that they would not be held to the thirty day limitation in sec. 66.05(3), Stats. Essentially, their contention is grounded in the principles of equitable estoppel.

For a court to invoke equitable estoppel, a party's reliance on another's conduct must be reasonable. *Chicago & North Western Transportation Co. v. Thoreson Ford Products, Inc.,* 71 Wis.2d 143, 154, 238 N.W.2d 69, 75 (1976). The mortgagees and mortgagors could not reasonably interpret the city's actions as a waiver of the

---

ing the inspector of buildings or other designated officer from razing and removing the building or part thereof or forever be barred.

Section 893.76, Stats., provides:

An application under s. 66.05(3) to a circuit court for an order restraining the inspector of buildings or other designated officer from razing and removing a building or part of a building shall be made within 30 days after service of the order issued under s. 66.-05(1) or be barred.

It should be noted that these statutes do not place a time limit upon the municipality to carry out a properly issued raze order.

[4] The trial court described the parties' actions as follows:

[T]here was an informal agreement and my reading of the gist of the situation is probably that this is a normal way of handling it with the building inspector's office, rather than go through the normal route of 66.05 they call them and see if they will hold them; in this case they agreed to hold them and the parties to this case relied upon that agreement with the City through the building inspector's office to their detriment and included in the notes, the building inspector's notes, said there must have been some misunderstanding. Obviously there was, somebody got anxious. So, there are a lot of grounds and they are obviously equitable.

statute. In *Grams v. Melrose-Mindoro Joint School District No. 1*, 78 Wis.2d 569, 254 N.W.2d 730 (1977), the supreme court stated:

When the legislative will is expressed in peremptory terms of a statute it is paramount and absolute and cannot be varied or waived by the private conventions of the parties. It follows that the legal effects and consequences of the statutory limitation cannot be avoided by estoppel. [Citations omitted.]

*Id.* at 578, 254 N.W.2d at 735.

The language is clear. The actions of the mortgagees and mortgagors ignored the express provisions of sec. 66.05(3), Stats. A party cannot claim "reasonable reliance" in light of a clear statutory command.

The procedure set forth in sec. 66.05(3), Stats., constitutes the exclusive remedy. *Donley v. Boettcher, supra,* at 405, 255 N.W.2d at 579; *Gehr, supra,* at 124, 260 N.W.2d at 34. No challenge to the city's order was timely filed. Proper notice of the decision to raze was given. The fact that the city allowed the redemption period to lapse before razing the property is not a waiver of the statutory provisions. The city was merely affording persons affected the opportunity to redeem the property and protect their interest. No redemption occurred. Therefore, the city was well within its authority to proceed with the razing.

*By the Court.*—Judgment and order reversed.